The State v. Smith, *Appellant.*

Division Two, November 20, 1894.

1. **Criminal Practice**: FELONIOUS ASSAULT: CONFESSION: EVIDENCE. A statement by defendant charged with a felonious assault made immediately after the affray in the presence of spectators that "I have fixed one of you and I would just as soon fix three or four more of you as not," is admissible as a confession that defendant committed the deed and also as tending to show ill will, but not as a part of the *res gestæ.*

2. ——: ——: EVIDENCE: CONTRADICTORY STATEMENTS. A witness testifying as to defendant's character is not exempt from cross-examination relative to contradictory statements made by him to the prosecuting attorney.

3. ——: ——: ——. Evidence tending, after defendant has testified, to impeach his moral character is competent.

4. ——: ——: ——. Evidence of a prior conviction of an assault and battery is inadmissible to affect defendant's credibility as a witness.

5. ——: ——: INSTRUCTIONS: SELF-DEFENSE. Where the instructions given apply to every phase or appearance of supposed danger raised by the evidence, they are not open to the objection that they ignore the right of defendant to act on appearances.

6. ——: ——: ——: ——.  An instruction, that "if you believe from the evidence that defendant invited and brought on the difficulty for the purpose of stabbing Cook then there is no self-defense and you can not acquit him on that ground," in the absense of any evidence to that effect, is erroneous.

*Appeal from Buchanan Criminal Court.*—BENJAMIN J. CASTEEL, *Esq.*, Special Judge.

REVERSED AND REMANDED.

The sixth instruction given by the court and referred to in the opinion is as follows:

"6. You are further instructed that the defendant had no right to provoke the difficulty with Cook or put himself in the way of being assaulted for the purpose of stabbing or killing said Cook; and if you believe from the evidence that defendant invited and brought on the difficulty with Cook for the purpose of stabbing Cook, then there is no self-defense in the case and you can not acquit him on that ground."

*M. G. & J. Moran* for appellant.

(1.) The evidence of what took place, and what the defendant said, after Cook left, was no part of the *res gestæ*, and it was error in the court to admit such evidence. *State v. Snell*, 78 Mo. 241; *State v. Evans*, 65 Mo. 574; *State v. Umfried*, 76 Mo. 404; *Bins v. State*, 57 Ind. 46. Wharton's Criminal Evidence, sec. 505; Hare on Discovery [2 Ed.], 151 and 152. (2) The evidence of the state impeaching the character of the defendant was incompetent, and the form of the questions admitted was well calculated to do the defendant an injustice. It is the established rule that evidence of bad general moral character may be given in the impeachment of a witness. This rule, however, is invariably coupled with the qualification that single and

particular acts of moral delinquency can not be shown. Besides, in the case at bar, the state does not attempt to assail defendant's moral character. *State v. Shields*, 13 Mo. 336; *State v. Hamilton*, 55 Mo. 520; *State v. Breeden*, 58 Mo. 507; *State v. Clinton*, 67 Mo. 381; *State v. Miller*, 71 Mo. 590; *State v. Grant*, 79 Mo. 133; *State v. Bulla*, 89 Mo. 595; *State v. Taylor*, 98 Mo. 244. (3) The admission of the judgment of defendant's conviction for an assault and battery was incompetent, and did the defendant an incalculable injury. *State v. Taylor, supra; State v. McGraw*, 74 Mo. 573; *Dickinson v. Dustin*, 21 Mich. 561; *People v. Reinhart*, 39 Cal. 449; 2 Hale's Pleas of the Crown, 278; 1 Greenleaf on Ev., sec. 377. (4) The instructions on the doctrine of self-defense do not properly define the law in the case at bar. They utterly ignore the principle that the defendant had the right to act on appearances, although the appearances were false, and as a matter of fact, the defendant was not in any real danger. The evidence in the case at bar fully warranted this principle and it should have been given. *State v. Umfried*, 76 Mo. 405 and 408; *Nichols v. Winfrey*, 79 Mo. 544 and 546; *Morgan v. Durfee*, 69 Mo. 477; *State v. Eaton*, 75 Mo. 591.

*R. F. Walker*, Attorney General, and *R. E. Culver*, Prosecuting Attorney, for the state.

(1) The declaration made by the defendant immediately after the cutting was competent to go to the jury. (2) The instructions properly covered the law of the case. (3) The allegation of the defendant that the verdict was against the law and the evidence is without merit; the finding of the jury as to this and all other criminal cases will not be disturbed by this court, unless it be apparent that there was a total failure of proof,

and that the jury were actuated by prejudice or passion. *State v. Young*, 24 S. W. Rep. 1038; *State v. Banks*, 118 Mo. 117; *State v. Moxley*, 115 Mo. 644; *State v. Herman*, 117 Mo. 629.

GANTT, P. J.—The defendant in this case was charged with an assault with intent to kill Charles Cook, in the city of St. Joseph, on the second day of November, 1892.

Charles Cook, the prosecuting witness, was a blacksmith in the employment of one Cannon as a horseshoer. The defendant had, previous to the altercation with Cook, been in the employment of William Tullar, but had either quit voluntarily or been discharged and on the second day of November, 1892, had come to Tullar's office, adjoining the shop, to make a settlement with Tullar, who had that day sold the shop to Cannon. While there, Cook, who was engaged in shoeing a horse, asked where the No. 4 shoes were kept and the defendant volunteered the statement that they were in the No. 4 box. Cook replied "he had looked there and they were not;" that "he guessed he knew a No. 4 shoe when he saw it." Whereupon defendant replied that "he had seen smart sons of bitches around there before." "You would not know a front shoe from a hind shoe if you saw it." To this Cook replied, "You nor no other man can call me a son of a bitch," and started toward defendant, who also started to Cook. They met and struck at each other. The preponderance of evidence supports the claim that Cook struck the defendant in the mouth with his fist and knocked him back against the office door which prevented his falling, and that defendant then stabbed Cook in the left breast about an inch and a half below the nipple and about three inches from the breast bone, penetrating the cavity.

There is much conflict as to whether Cook had a horseshoe in his hand and which hand, if either, when he assaulted defendant. Cook denies having it when he struck; but says he attempted to pick up a horseshoe after he was stabbed and that defendant told him to drop it or he would kill him. Cook stood a moment and went out of the shop and thereupon witnesses testify that defendant said to Cannon, with an oath, "May be you want to take it up; I have fixed one of you ———— ———— ———— ———— and I would just as soon fix three or four more of you as not." Cook went to a livery stable near by and a physician was called who found him bleeding profusely from the wound. The various assignments will be considered in their order.

I. The statement of the defendant to Cannon was no part of the *res gestæ* and was not admissible as such, but it does not follow that it was altogether incompetent. It tended to prove the charge that defendant had assaulted Cook, and the language was such as tended to show much ill will. While a disconnected threat to stab Cannon would have been immaterial and irrelevant, when it is a part of an admission that defendant had stabbed Cook, it was competent, although it tended to prove another distinct offense.

II. There is no force in the point that Tullar was exempt from cross-examination when testifying in behalf of defendant as to his character. He was the defendant's witness when he was being examined on this subject, and, if he had made contradictory statements to the prosecuting attorney, it was entirely legitimate to call his attention thereto, and ask if he had not made them.

III. Evidence tending to impeach the general moral character of defendant after he had submitted himself as a witness was admissible. No specific objection was made to this evidence, and no error can be

predicated on it. It would have been better to have framed the questions more definitely, but the defendant made no suggestion in this respect.

IV. The trial court, over and against the objection of defendant, admitted the record of a former conviction of the defendant of an assault and battery and a fine therefor of $25. In this the court erred. At common law a witness was incapacitated by conviction of an infamous crime. His competency was not affected by conviction of a mere misdemeanor. With us the conviction of a felony affects his credibility, but does not render him incompetent as a witness, but conviction of a mere assault and battery is not admissible to impeach a witness. It does not affect his general moral character.

The defendant complains of the court's instructions on self-defense. The court, of its own motion, over objections and exceptions, gave the following instructions:

"1. If you believe from the evidence that there was a quarrel between Charles Cook and the defendant, in which angry words and provoking epithets were exchanged, and that an altercation ensued in which Cook was the aggressor, and that he assaulted the defendant by striking him in the face with a horseshoe before the defendant cut him with a knife, and that the horseshoe as used was such a weapon as could or might inflict great personal injury on the defendant, and the defendant had reasonable cause to apprehend and did apprehend and believe a design on the part of Cook to do him any great personal injury, and had reasonable cause to apprehend, and did apprehend and believe there was immediate danger of such design being accomplished, and that he used the knife in question under circumstances which were reasonably necessary to prevent such danger

from being further carried into execution, then such cutting and striking with a knife by the defendant was justifiable, and the jury should accquit him.

"2.    That if the jury believe that Cook made an assault upon the defendant with a horseshoe, or with his clenched fist, and had a horseshoe in his other hand, and under circumstances which indicated a design on his part to do defendant great personal injury, and that defendant believed that said danger was imminent, then the defendant was at liberty to use whatever force was necessary to repel such an assault and protect himself even though in the fray he wounded his opponent with a deadly weapon. The jury are the sole judges of the reasonableness of the force or violence necessary to accomplish this object; of the time when the assaulted party may strike; and the degree of force he may use to prevent violence or injury to himself; and, although the jury may believe from the evidence that the defendant struck and cut Charles Cook with a knife, yet, if the same was done in self-defense and not feloniously, on purpose and with malice aforethought, the verdict should be for the defendant."

The point is made and the objection urged against these instructions that they ignore the right of defendant to act upon appearances. While it is unquestioned law, at least in this state, that one may act upon appearances, although they turn out to be baseless, the trial court is not required in every instance to affix that qualification to an instruction for self-defense, but should only give it in a case when it would apply to facts. Here the court's instructions apply to every phase of the evidence, and there was no appearance of any supposed danger, other than that on which the instructions are based. In other respects the defend-

ant's instructions on self-defense are identical with those given by the court of its own motion.

The sixth instruction should not have been given. There was no evidence that defendant sought the diffi-. culty for the purpose of wreaking his vengeance on Cook.

As the court improperly admitted the record of a former conviction for a distinct assault and battery and it does not appear to us that this error was harmless, and gave the sixth instruction, the judgment is reversed and cause remanded for a new trial. All of this division concur.