[Crim. No. 295. Second Appellate District.—September 25, 1913.]

## THE PEOPLE, Respondent, v. EGBERT J. BARRETT, Appellant.

CRIMINAL LAW—HOMICIDE—EVIDENCE—CONDUCT OF DEFENDANT.—In a prosecution for homicide evidence that the defendant, within less than an hour after the crime, drew a revolver, pointed it at himself, and upon its being taken from him said, "I couldn't do it," is admissible; it being for the jury to determine whether such evidence tends to show guilt, or was prompted by remorse for a justifiable act in taking life.

ID.—EVIDENCE—BOARD PERFORATED BY BULLET.—Where the defendant pleads self-defense in a prosecution for homicide, a board from the floor, where the deceased was found lying after the shooting, with a bullet hole in it, is admissible in evidence; whether or not the perforation was made by a bullet fired by the defendant through the deceased after he had fallen, or whether made in some other manner, being questions for the jury to determine.

ID.—IMMATERIAL EVIDENCE—OVERCOAT WORN BY DECEASED.—The introduction in evidence of the overcoat worn by the deceased at the time he was killed, if immaterial and without weight, is not prejudicial to the rights of the defendant.

ID.—REPUTATION OF DECEASED—LIMITATION ON EVIDENCE SHOWING.— After the court has allowed considerable evidence to the effect that the deceased was in the habit of using profane language, talked too much, and "cussed the boys," it may properly refuse further testimony of this character.

ID.—EXHIBITS—TAKING TO JURY ROOM.—It is not obnoxious to section 1137 of the Penal Code to permit the jury to take with them to

the jury room such exhibits as a revolver, an overcoat, and a piece of flooring which were offered in evidence.

ID.—RELATIONS BETWEEN ACCUSED AND DECEASED—INSTRUCTIONS SHOWING.—In a prosecution of a member of the police force for shooting the chief of police, it is not error to give the jury an instruction which embodies the charter provision of the city, showing the powers, duties, and authority of the deceased as the defendant's superior officer.

ID.—SELF-DEFENSE—ACTS IN EXCESS OF THOSE NECESSARY FOR SAFETY —INSTRUCTIONS.—An instruction on the right of self-defense, as to the apparent necessity or absence thereof for the defendant firing shots in excess of those sufficient to protect himself, is not erroneous, if there is evidence tending to show that the last shot was the fatal one.

ID.—DEGREE OF DEFENSE—INSTRUCTIONS.—A defendant charged with murder and convicted of manslaughter is not in a position to complain of an instruction as to what constitutes murder in the first degree.

APPEAL from a judgment of the Superior Court of Riverside County and from an order refusing a new trial. Curtis D. Wilbur, Judge presiding.

The facts are stated in the opinion of the court.

Miguel Estudillo, and Lafayette Gill, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

SHAW, J.—Upon an information charging him with murder defendant was convicted of manslaughter, the judgment of the court being that he be imprisoned for a term of ten years. He appeals from the judgment and an order of court denying his motion for a new trial.

At the time of the tragedy, defendant was a police officer in the city of Riverside, and John R. Baird, the deceased, was the acting chief of police of said city. At about midnight on December 14, 1912, defendant met Baird and Policeman Lucas, when deceased, after some conversation with defendant, told him that he had been drinking. All three of the parties repaired to the police station, where Baird and defendant sat down in the front office and talked the matter over in the

presence of Lucas. During this talk Baird said to defendant: "Bert, you have been drinking," and receiving no reply, added: "You are drunk enough to be thrown down stairs." At this defendant applied to deceased a vile epithet, but immediately withdrew it, stating that he was sorry he had said it, at which, after a few minutes further conversation, apparently, as witness Lucas states, free from anger or excitement, they, at the command of Baird, went into the rear office of the station, deceased closing the door after them, and continued their talk in an ordinary tone, so low, however, that Lucas, who remained in the outer room, could not distinguish what was said. In a very few minutes Lucas opened the door, saying "good night." that he was going home, to which deceased replied "all right," that he was going in a few minutes. At this time the parties were standing, and nothing in their manner indicated that either was angry or excited. Lucas left the door to this private office open, and made his preparations in the outer office to go home. In a very short space of time he stepped from this outer office through a screen door out upon the street, when he heard immediately from the private office the report of a gun, followed in quick succession by two other reports. Going back he found deceased lying upon the floor in a dying condition and defendant standing near him with a revolver in his hand.

The shooting of deceased is admitted by defendant, his contention being that it was done in self-defense. The only evidence as to what occurred in the back room was that given by defendant, who testified that after entering this room he and deceased both remained standing, and that neither one said anything for a little while, until deceased looked at him and said: "Bert, I don't know what to do with you"; and said something about Harbison and Lucas (two members of the police force) talking about his drinking; that deceased then said to him: "If it wasn't for your family, I would send you home right now," to which defendant replied: "John, that is no way to use a man; this thing has gone far enough; you are not fit for the job you have got"; and, as testified by defendant, "he (deceased) seemed to fly into a passion, and said, 'I will fix you.' " Deceased, so defendant says, was standing with his elbow resting upon a table, and as he said this, he dropped his hand and "I thought the man was going for his

revolver in his overcoat pocket." "I pulled my revolver and fired three times just as quick as I could, as near as I can tell." At the time deceased had no revolver in his overcoat pocket; nor was there any evidence that he ever carried a gun therein. His revolver was in its holster belted around him under his blouse and overcoat, both of which were buttoned up and his gloves were on. It is unnecessary to quote further from the evidence. Suffice it to say that much circumstantial evidence was adduced which tended to prove a total absence of any reason for defendant believing that deceased was about to attack him; indeed, the insufficiency of the evidence to justify the verdict is not assigned as error.

The grounds assigned by appellant for reversal are: Alleged erroneous rulings of the court in the admission and rejection of evidence, and erroneous instructions given to the jury.

1. Defendant's objection to evidence that at the sheriff's office, where he was taken, and within less than an hour after the commission of the offense, he drew his revolver from its holster, pointed it at himself in a threatening manner, and upon the gun being taken from him, said, "I couldn't do it," was overruled. It was not error to admit evidence of this unnatural act, leaving the jury to determine whether it was entitled to any weight as tending to show defendant's guilt, or whether it was prompted by a feeling of remorse for a justifiable act in taking human life. (*People* v. *Weber*, 149 Cal. 339, [86 Pac. 671]; *People* v. *Leung Ock*, 141 Cal. 323, [74 Pac. 986].)

2. Mr. Lucas and the mayor testified that the next morning after the homicide they saw what appeared to be a bullet hole in the floor with blood around it, about where the head of deceased rested when witness Lucas entered the room after the shooting. This board was removed, and, upon sufficient evidence that its condition was identical with that in which it was found immediately after the shooting, it was admitted in evidence. Whether or not the perforation was made by a bullet fired by defendant into and through the head of deceased after he had fallen, or whether made in some other manner, were questions for the jury to determine.

3. Objection was made to the introduction in evidence of the overcoat worn by deceased at the time he was killed, the ground therefor being that it did not tend to prove or disprove

any of the issues in the case. The objection was overruled. If we accépt the view of counsel for appellant that the evidence was wholly immaterial and without weight for any purpose, it must necessarily follow that the error in so ruling could not have prejudiced the substantial rights of defendant.

4. The action of the court in admitting in evidence article XII of the charter of Riverside is assigned as prejudicial error. An examination of the record, however, shows that defendant's objection to the reception of said article in evidence was sustained; hence there is no occasion for complaint.

5. It is insisted that the court denied to defendant the right to offer evidence tending to show that the reputation of deceased for peace and quiet was bad, and that he was reputed to be a violent and dangerous man. The record discloses no limitation placed upon the examination of witnesses for the purpose of showing the reputation of deceased for peace and quiet, other than the fact that the court, after allowing considerable evidence to the effect that deceased was in the habit of using profane language, talked too much, and "cussed the boys," refused to permit further testimony of this character. Such ruling was not error. As said by the learned trial judge: "Violent language is no justification for an assault." In *People* v. *Murray*, 10 Cal. 310, it is said: "The rule is well settled that the reputation of the deceased cannot be given in evidence, unless, at the least, the circumstances of the case raise a doubt in regard to the question whether the prisoner acted in self-defense. It is no excuse for a murder that the person murdered was a bad man; but it has been held that the reputation of the deceased may sometimes be given in proof to show that the defendant was justified in believing himself in danger, when the circumstances of the contest are equivocal." This language is quoted with approval in *People* v. *Lamar*, 148 Cal. 573, [83 Pac. 996], where it is further said: "The reputation of the deceased as a violent, turbulent, dangerous man would be a legitimate subject of inquiry, illustrating the *animus* with which he encountered the defendant." We cannot concede, as claimed by appellant, that from the fact deceased used "cuss words," "talked too much," and "called one of the boys a liar," it necessarily followed that deceased was a dangerous or violent man. An examination

of the record in this regard shows that the court was extremely liberal in the latitude accorded defendant.

6. The action of the court in complying with the jury's request that they be permitted to take with them to the jury room certain exhibits,—namely: the overcoat, revolver, and piece of flooring offered in evidence, is assigned as error, appellant claiming that such action is obnoxious to the provisions of section 1137 of the Penal Code. This section is almost identical with section 612 of the Code of Civil Procedure. There is nothing in either of these sections which limits the discretionary power of the court to allow exhibits of the kind in question to be taken to the jury room. The reason for the inhibition as to depositions is obvious. ''The court may permit the jury to take with them and use in their deliberations any exhibit where the circumstances call for it, observing the proper precaution of instructing the jury in the nature of the use which they shall make of the exhibit.'' (*Higgins* v. *Los Angeles Gas & Elec. Co.,* 159 Cal. 651, [34 L. R. A. (N. S.) 717, 115 Pac. 313].) There was no occasion here for any instructions. Moreover, conceding the ruling to have been erroneous, it does not appear that any use was made of the exhibits which could by any possibility have been prejudicial to defendant. (*People* v. *Hower,* 151 Cal. 646, [91 Pac. 507].)

7. As stated, deceased was acting chief of police of Riverside. The court gave to the jury an instruction embodying the charter provision of the city with reference to the police department, wherein the powers and duties of the chief of police were set forth, and instructed it that deceased, if they found that he was acting chief, had and possessed like powers. Among other things, the charter, as the jury were told, provided that ''he (the chief) shall have power to suspend or remove any member of the police force for disobedience of any lawful order, for the violation of rules and regulations of the department and for neglect of duty, or for conduct unbecoming a member of the police force.'' Appellant insists that the giving of this instruction was prejudicial error, for the reason that it in effect gave the jury to understand that deceased was justified in his treatment of defendant, and thereby led to excuse the acts of deceased, who was the aggressor and assailant, upon the ground that such acts were in pursuance

22 Cal. App.—50

of the duties of deceased as such acting chief of police. This contention is without merit. It was proper that the jury, in considering the evidence, should not only know the relations existing between the parties, but know the powers, duties, and authority of deceased as defendant's superior officer.

8. The court, after instructing the jury clearly and fully as to the law of self-defense applicable to the circumstances of the case, told them that, notwithstanding the fact they might be convinced that defendant acting upon appearances was justified in believing, and did believe from the circumstances and appearances, that the deceased intended to make an assault upon him with a deadly weapon with intent to do him great bodily harm or kill him, they should "also consider whether or not the conduct of the defendant in resisting that assault upon him, if any such you find, was the exercise of such reasonable force as was reasonably commensurate with the apparent danger. If you should find from the evidence beyond a reasonable doubt that the firing of one shot or more was all the force appearing to the defendant as a reasonable man to be necessary under all the circumstances as they appeared to a reasonable man situated as defendant was situated, to successfully resist such assault, the court instructs you that the firing of any other shot would not, under such circumstances and conditions, be justified by the law of self-defense; and the court instructs you that if you find the defendant fired any more shots at the deceased than would so appear to the defendant acting as a reasonable man under all the circumstances as they appeared to him as a reasonable man at the time than was or appeared to be really necessary to resist the assault upon his person aforesaid, you should find that such shot, if any such you find, so fired in excess of those appearing to the defendant as a reasonable man to be reasonably necessary for his defense as aforesaid were not justifiable, and the defendant is as fully liable for the consequences of any shots fired in excess of those reasonably necessary as aforesaid, or appearing to be as aforesaid, as though they were not preceded by any acts on his part, or the firing of any shots which of themselves would not be justifiable under the law of self-defense; if, therefore, you should find from the evidence beyond a reasonable doubt that the shot or shots which killed the deceased, if you find from the evidence beyond a reason-

able doubt that he was so killed, were fired by the defendant at the deceased while the deceased was lying upon the floor and after all apparent danger which would justify a reasonable man in further resistance had passed, then in that event the defendant would not be justifiable under the law of self-defense.'' The giving of this instruction is attacked as not only being erroneous, but as highly prejudicial to the substantial rights of defendant, in support of which contention counsel cite *People* v. *Thomson,* 145 Cal. 717, [79 Pac. 435]. Elsewhere the jury were fully and properly instructed with reference to defendant's right to act upon appearances, and the apparent necessity of using force even to the extent of taking life in order to protect his own or prevent the infliction of great bodily harm, even though in fact there was no danger. The instruction complained of had reference solely and alone to the apparent necessity or absence thereof for firing fatal shots in excess of those sufficient to protect defendant. There was some evidence tending to prove that the last shot was the fatal shot, and that that was fired after deceased had fallen to the floor. If the jury were satisfied that this was true, and likewise satisfied that by reason of the circumstances as they then appeared to defendant as a reasonable man he no longer had cause for fear, it would justify a conviction.

9. Since defendant was convicted of manslaughter he is not in a position to complain of an instruction as to what constituted murder in the first degree. Conceding the instruction attacked to be argumentative, and that it assumed facts not borne out by the evidence, as claimed, defendant could not have been prejudiced by the giving of it. (*People* v. *Ryan,* 152 Cal. 364, [92 Pac. 853]; *People* v. *Besold,* 154 Cal. 363, [97 Pac. 871].)

The verdict is amply supported by the evidence, and we find no prejudicial error. The judgment and order are, therefore, affirmed.

Allen, P. J., and James, J., concurred.