[Crim. No. 941. Second Appellate District, Division Two.—May 4, 1923.]

## THE PEOPLE, Respondent, v. ROBERT BROWN, Appellant.

[1] CRIMINAL LAW—MURDER—ADMISSION OF ILL WILL—EVIDENCE.—In a prosecution for murder, evidence that shortly after the shooting defendant exclaimed, "I got one of them and I will get the rest," while not admissible as part of the *res gestae*, is relevant to the issue of the express malice, it being an admission of defendant tending to show ill will toward the decedent immediately after the fatal shots were fired.

[2] ID.—DYING DECLARATIONS—PROPER FOUNDATION.—In this prosecution for murder, taking all the evidence together and considering all the attending circumstances, it was sufficiently shown that the dying declarations made by the deceased to his sister and admitted in evidence were made under the sense of impending death, and there was nothing to show a revived or subsequent hope of recovery.

[3] ID.—EXPRESSIONS OF OPINION—WAIVER OF OBJECTIONS.—Where a part of the dying declaration admitted in evidence was not the

---

1. Presumption as to express malice from act of killing, note, 38 L. R. A. (N. S.) 1073.

2. Admissibility of dying declaration of person for whose death accused is on trial, notes, 17 Ann. Cas. 287; Ann. Cas. 1913C, 412; Ann. Cas. 1917A, 612; Ann. Cas. 1918C, 581; 25 A. L. R. 1370; 56 L. R. A. 382; 40 L. R. A. (N. S.) 1195.

3. Admissibility of opinion of declarant as dying declaration, note, Ann. Cas. 1913E, 228.

narration of a fact but an expression of the mere opinion or belief of the dying man, but the declaration was not objected to in the trial court upon the ground that any part of it consisted of conclusions or of statements of mere opinion, and no motion was made to strike out any of its objectionable features upon that ground, the objection cannot be raised on appeal.

[4] ID.—ADMISSION OF KILLING—SELF-DEFENSE—DYING DECLARATIONS. The fact that defendant admitted the killing did not render the admission of the dying declarations of the deceased unnecessary, where the declarations tended to destroy the defendant's claim that he shot in self-defense.

[5] ID.—EXCESS SHOTS—SELF-DEFENSE—INSTRUCTIONS.—The evidence having shown that each of the four shots fired by defendant took effect in the decedent's body, and the trial court having instructed the jury clearly and fully as to the law of self-defense applicable to the circumstances of the case, it was not error to instruct them further that if, under all the circumstances as they would appear to a reasonable man situated as defendant was, the firing of one shot or more was all the force necessary to the defendant as a reasonable man to resist the assault upon him, then under such circumstances the firing of any additional shot or shots would not be justifiable by the law of self-defense.

[6] ID.—CONSTITUTIONAL PRIVILEGE OF SILENCE—WAIVER.—A defendant in a criminal prosecution who takes the stand in his own behalf waives his constitutional privilege of silence; and if he testifies to the merits of the charge but withholds testimony of other facts which form a part of the charge against him and of which he is informed, he must expect to incur the discredit which the jury would naturally visit upon the ordinary witness pursuing a like course.

[7] ID. — TESTIMONY OF DEFENDANT — WEIGHT — ERRONEOUS INSTRUCTION.—In a prosecution for murder in which the defendant takes the stand and testifies to a collateral issue, but does not testify to any fact which constitutes a constituent element of the charge in issue, a requested instruction which deals with the right of the defendant to so testify, but which ends with the statement that the testimony of the defendant in a criminal action "is to be weighed by you in the same light as the testimony of any other witness in the case," is properly refused, as this latter statement infringes upon the province of the jury.

[8] ID.—INSTRUCTION ERRONEOUS IN PART—REJECTION OF WHOLE.—If any part of a single instruction should not have been given, the action of the trial court in rejecting the whole will be affirmed on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County. Sidney N. Reeve, Judge. Affirmed.

62 Cal. App.—7

The facts are stated in the opinion of the court.

S. S. Hahn for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant was charged with the murder of one William Antior. The jury returned a verdict of guilty of murder in the second degree, and defendant now appeals from the judgment and from the order denying him a new trial. No question is raised as to the sufficiency of the evidence to support the verdict. Appellant, who admitted the killing but claimed that he acted in self-defense, complains of certain rulings and instructions.

Defendant occupied an apartment on the third floor of an apartment house in the city of Los Angeles. On the second floor lived a couple who on the evening of May 20, 1922, were entertaining in their apartment the deceased and a few other guests. These latter seem to have been an uproarious party of merrymakers, for some time after midnight defendant went to their door and complained of the noise they were making, threatening to have them arrested for disturbing his peace. The hostess requested defendant to go away, and threatened, in turn, to have him arrested for disturbing the peace of herself and guests. Thereupon defendant returned to his apartment on the floor above. Shortly thereafter the deceased, who was unarmed, left the apartment where he and others were guests of the couple on the second floor, and walking upstairs to defendant's apartment, invited the latter to come out and fight. Defendant, who was armed with a pistol, fired four shots at the deceased. Each of the four bullets took effect, and Antior died in a hospital fourteen hours later. According to the evidence adduced by the prosecution, defendant, while seated on a table in his apartment, fired the shots at the deceased while the latter stood in the hallway about two feet outside and in front of the open door leading into defendant's room. Witnesses for the defendant, on the other hand, testified that when the deceased arrived at the spot in front of the door leading to defendant's apartment the door was closed, and that, after challenging defendant to come out and fight, Antior angrily pushed the door open

and entered the room, exclaiming as he did so, "Well, if you don't go out and fight, I will go and get you, you son-of-a-bitch," and that it was then that defendant fired the four shots.

[1] A witness for the prosecution, over defendant's objection that it was not a part of the *res gestae,* testified that shortly after the shooting defendant exclaimed, "I got one of them and I will get the rest." This testimony was properly admitted. (*People* v. *Sampo,* 17 Cal. App. 135, 149 [118 Pac. 957]; *People* v. *Hawes,* 98 Cal. 648 [33 Pac. 791].) While it was not admissible as a part of the *res gestae,* yet as an admission of defendant tending to show ill will toward the decedent immediately after the fatal shots were fired it was relevant to the issue of express malice. (*State* v. *Smith,* 125 Mo. 2 [28 S. W. 181]; *Lewis* v. *State,* 29 Tex. App. 201 [25 Am. St. Rep. 720, 15 S. W. 642].)

[2] A dying declaration given by the deceased to his sister was admitted in evidence. It is contended that the preliminary proof upon behalf of the people was not sufficient to lay a proper foundation for its admission. The sister was with her dying brother at the hospital for about two hours immediately before he expired. It was during this time and shortly before he breathed his last that he made his dying declaration. A witness who was present when the declaration was made testified that shortly prior thereto the deceased took a ring off his finger, gave it to his sister and told her to keep it; that he informed his sister that his furniture was paid for, and told her to keep that also; that he told her to keep the sewing-machine, upon which he said there remained one or more payments to be made; that he told her to keep everything; that in giving his dying declaration he gave it "between breaths," and that it "would take him five minutes to get his breath after saying a few words." The sister testified that she asked her brother if he could talk and that he replied that "he knew he was dying." Thereupon he made his dying declaration. Taking all the evidence together and considering all the attending circumstances, it was sufficiently shown that the deceased made the declaration under the sense of impending death, and that there was nothing to

show a revived or subsequent hope of recovery. The court did not err in admitting it in evidence.

The declaration was not reduced to writing—the deceased expired before that could be done. The sister testified that it was given in the following words: "I asked my brother, I says, 'Billie, tell me the truth. Where were you when you were shot?' He said, 'I was outside of Brown's door with my back to his door.' I said, 'Did you go in Brown's room?' and he said, 'No, he killed me in cold blood.' So I said, 'Now, Billie, tell me the truth. I will ask you again whether you were in Brown's room.' He said, 'No,' which he says, 'I asked Brown to come outside'; and he says, 'After I come in off that little porch my back was to Brown's door, and Brown sat on his table in his bathrobe and shot me from the back.' I said, 'You wasn't in his room?' and he said, 'No'; he said, 'I will make that statement to the detectives if you get them.' And I telephoned twice for the detectives, and they were so long coming that he died about ten minutes before they got there."

[3] Appellant urges as further objections to the admission of this declaration that parts of it were but conclusions of the deceased, such, for instance, as the statement that "he killed me in cold blood," and that there was no necessity for its introduction because the killing was admitted. There is no merit in either contention. True, the declaration that the decedent was killed "in cold blood" was not the narration of a fact but was an expression of the mere opinion or belief of the dying man. However, the declaration was not objected to in the court below upon the ground that any part of it consisted of conclusions or of statements of mere opinion, nor was any motion made to strike out any of its objectionable features. The attention of the lower court not having been called to this possible ground for a motion to strike, appellant cannot now be heard to urge the objection for the first time in this court. [4] There is no merit in the point that because the killing was admitted there was no necessity for introducing the dying declaration. The declaration tended to destroy defendant's claim that he shot in self-defense.

[5] As already stated, each of the four shots took effect in the decedent's body. The trial court, after instructing the jury clearly and fully as to the law of self-defense ap-

plicable to the circumstances of the case, told them that if, under all the circumstances as they would appear to a reasonable man situated as defendant was, the firing of one shot or more was all the force appearing necessary to the defendant as a reasonable man to resist the assault upon him, then under such circumstances the firing of any additional shot or shots would not be justifiable by the law of self-defense. The instruction as a whole was substantially the same as that which was commented upon and upheld in *People* v. *Barrett,* 22 Cal. App. 780, 786 [136 Pac. 520]. It had reference solely to the apparent necessity, or absence thereof, for firing fatal shots in excess of those sufficient to protect the defendant.

As a basis for his argument against the instruction appellant claims that it was the first or second shot which caused the death of Antior, and that, therefore, he was not amenable to a conviction of homicide by reason of any bullet which was fired into the body of the deceased after the latter had received his mortal wound; that the firing of such subsequent shot or shots might constitute good ground for his conviction of assault—a crime with which he was not charged and for which he was not on trial—but that since it could not afford ground for his conviction of the only crime for which he was on trial, homicide, it was error to give the instruction. There is no merit in the point. All of the wounds were of such a character that the jury would be warranted in finding that any one of the bullets, if not sufficient in itself to produce death, at least contributed to and hastened the demise of Antior. If appellant did not fire the last shot in self-defense, and if the wound inflicted by it contributed to or hastened Antior's death, the jury could properly find appellant guilty of homicide by reason of that shot, even though the first was fired in self-defense and though at the time the last shot was fired the deceased was already so severely wounded that his death would have followed in a very short time. (*Rogers* v. *State,* 60 Ark. 76 [46 Am. St. Rep. 154, 31 L. R. A. 465, 29 S. W. 894].) It is said by Mr. Bishop that "whenever a blow is inflicted under circumstances that render the party inflicting it clearly responsible, if death follows, he will be deemed guilty of homicide, though the person beaten would have died from other causes, or would not have died from this one had not

others operated with it; provided the blow really contributed either mediately or immediately to the death in a degree sufficient for the law's notice.'' (2 Bishop's Criminal Law (New), par. 637.) Moreover, the instruction made it clear to the jurors that they could not convict appellant of homicide by reason of any shot fired after apparent danger had passed unless they found that such subsequent shot killed the deceased. As a part of the instruction complained of the court specifically charged the jury that if they found "that the shot or shots *which killed deceased* . . . were fired by defendant . . . after all apparent danger which would justify a reasonable man in further resistance had passed, *then and in that event* the defendant would not be justified under the law of self-defense.'' (Italics ours.)

Finally, it is urged that the court erred in refusing to give an instruction requested by appellant. It seems that a witness for the prosecution testified that some time previous to the trial defendant had threatened that if he, the witness, should testify against defendant on the trial "he [the witness] would eat dust.'' Defendant voluntarily took the stand in his own behalf and denied that he had made any such threat. This was as far as his testimony went. He did not testify to any fact which constituted a constituent element of the charge in issue—the killing of Antior.

The requested instruction was as follows: "You are instructed that the defendant in a criminal action need not take the witness-stand to testify in his own behalf, and his failure to take the stand should not influence you against him. When a defendant does take the stand he has a right to testify about *any portion* of his case, and no prejudice should be raised in the jurors' minds against him because he does not testify about all instances concerning his case. When a defendant takes the stand his testimony is not to be distrusted merely because he is the defendant; on the contrary, his testimony is to be weighed by you in the same light as the testimony of any other witness in the case.'' (Italics ours.)

The instruction was properly refused. It may be that under the circumstances it would have been error had the court refused a requested instruction to the effect that where a defendant in a criminal action testifies only to a collateral matter—a matter not directly related to any fact which

is a constituent part of the crime with which he is charged
—no inference unfavorable to him can be drawn from his
failure to testify to such matters as are directly connected
with the charge in issue. But that was not the instruction
requested. If the court had given the instruction as re-
quested its effect would have been to charge the jury that
when a defendant takes the stand and testifies concerning
*"any portion* of his case" (such is the language of the re-
quested instruction), no prejudice should be raised against
him because he does not testify to all the facts of his case.
Such an instruction is too broad. It is not a correct state-
ment of the law. Had it been given it would have been
tantamount to a charge that the defendant in a criminal
action can tell half of the story touching the merits of the
case and then stop short by omitting to explain incriminating
circumstances and events in which he participated and con-
cerning which he is fully informed, without subjecting his
silence to the inferences to be naturally drawn from it.
Such is not the law. **[6]** A prisoner who takes the stand
in his own behalf waives his constitutional privilege of
silence; and if he testifies to the merits of the charge but
withholds testimony of other facts which form a part of the
charge against him and of which he is informed, he must
expect to incur the discredit which the jury would natu-
rally visit upon the ordinary witness pursuing a like course.
(*State* v. *Harrington,* 12 Nev. 125; *State* v. *Ulsemer,* 24
Wash. 657 [64 Pac. 800]; *State* v. *Tatman,* 59 Iowa, 471
[13 N. W. 632]; *Diggs* v. *United States,* 220 Fed. 545 [136
C. C. A. 147], where an elaborate discussion of the authori-
ties may be found; affirmed, 242 U. S. 470, 493, 494 [Ann.
Cas. 1917B, 1168, L. R. A. 1917F, 502, 61 L. Ed. 442, 37
Sup. Ct. Rep. 192].)

**[7]** Moreover, the concluding part of the requested in-
struction, that which says that the testimony of the defend-
ant in a criminal action "is to be weighed by you in the
same light as the testimony of any other witness in the
case," justified the refusal of the whole instruction.
" . . . any instruction at all as to the credibility of any
witness, or the weight to be given to his testimony, is vio-
lative of section 19 of article VI of the constitution, which
provides that 'judges shall not charge jurors with respect
to matters of fact.' " (*People* v. *Van Ewan,* 111 Cal. 149

[43 Pac. 521].) Such instructions should not be given, and. it is always proper to refuse them. (*People* v. *Winters,* 125 Cal. 329, 330 [57 Pac. 1067]; *People* v. *Ross,* 134 Cal. 258 [66 Pac. 229]. See *People* v. *Hiltel,* 131 Cal. 580 [63 Pac. 919].) **[8]** It has been repeatedly held that if any part of a single instruction should not have been given the action of the trial court in rejecting the whole will be affirmed. (*People* v. *Davis,* 64 Cal. 440 [1 Pac. 889].)

The judgment and order are affirmed.

.Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1923, and then rendered the following opinion thereon:

THE COURT.—In denying the petition for rehearing, although this point is not urged in the petition, we do not wish to be understood as approving that portion of the opinion dealing with the last instruction set forth in the opinion with reference to the defendant's testimony. It is unnecessary to determine in this case whether the defendant was entitled to an instruction that "When a defendant does take the stand he has a right to testify about any portion of his case, and no prejudice should be raised in the jurors' minds against him because he does not testify about all instances concerning his case." The instruction was properly refused because it infringes upon the province of the jury in the last clause reading as follows: "When a defendant takes the stand his testimony is not to be distrusted merely because he is the defendant; on the contrary, his testimony is to be weighed by you in the same light as the testimony of any other witness in the case." (*People* v. *Winters,* 125 Cal. 325, 330 [57 Pac. 1067], and other cases cited in the concluding paragraph of the opinion of the district court of appeal. See, also, 8 Cal. Jur., sec. 394, p. 365, and cases cited.)