[Crim. No. 1376. Third Appellate District.—August 29, 1934.]

THE PEOPLE, Respondent, v. JESSE J. McCURDY, Appellant.

John L. Childs for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Defendant is here appealing from a judgment finding him guilty of murder ·of the second degree and from an order denying a motion for new trial.

Inasmuch as one of the grounds urged for reversal is the insufficiency of the evidence to sustain the verdict, we will set forth the evidence in some detail. ▮ We will not, however, narrate such circumstances as may appear in the record favorable to appellant, for in considering the insufficiency of the evidence it is not our province to pass upon the guilt or innocence of the accused, that being the duty of the jury, it being for this court to determine from the record whether the finding of the jury is supported by legal evidence tending to show the guilt of the accused.

The Smoke Shop in the city of Crescent City appears from the testimony to be a gathering place for certain of the young men of that community, where, in connection with a coffee shop, is conducted a pool hall and cigar stand, where beer and perhaps other beverages are sold. On the night of May 25, 1933, a dance had been held at Klamath, some miles from Crescent City, and several persons, including defendant, had stopped at the Smoke Shop for breakfast and refreshments. About 3:30 Sunday morning defendant was at the bar when a young man entered and purchased some cigarettes. His change was placed before him but was picked up by one of the bystanders. Remarks were made by those present regarding the matter and the attendant at the bar inquired to the effect: "Shall I hit him?" to which the proprietor, one Lloyd McLaughlin, replied in the negative. McCurdy, the appellant here, also spoke up and said, "No, don't hit him." At this point the deceased, David Lopez, an Indian, who was standing at the entrance to the bar, said to defendant McCurdy, "What have you got to say about it?" McCurdy answering, "Nothing, it is none of my business." At this point McLaughlin, the proprietor, called Lopez and McCurdy together and intro-

duced them and thereafter no further controversy was heard in regard to that matter. The evidence is clear that McCurdy was not under the influence of liquor, but it is equally clear that the deceased was intoxicated. As the two men stood conversing, Lopez asked McCurdy his name, and a third person to the conversation interposed and said, "His name is McCurdy, he works at the Radio Station," meaning the Naval Radio Compass Station, which is located near Crescent City. Lopez then requested McCurdy to go with him into the rear occupied as a billiard room and the two then retired to that portion of the Smoke Shop. Shortly thereafter McLaughlin went back into the darkened billiard room to see what the two men were doing, and, being assured by both that they were merely engaged in a friendly conversation, he left them alone. After the men had been in the billiard room some ten or fifteen minutes a shot was heard, followed by an interval, then by eight more shots. As the last shots were fired the back of the defendant appeared through the glass door between the bar and the billiard room, disappeared for a moment, then defendant emerged into the front of the building. He approached the bar and asked for a glass of beer, which was refused him. He then said no one could hit him with a cue and attempted to pass his revolver to McLaughlin, who refused to receive it. He then made some attempt to reload the revolver, but when some bystander remarked to him he better get rid of the shells he stepped to the curb in front of the Smoke Shop and threw several into the street. He then returned to the barroom, where he awaited the arrival of a deputy sheriff and on being informed he was an officer surrendered himself to him. Investigation showed that the deceased had been killed by gun wounds. An autopsy revealed that the deceased was struck by seven bullets, three entering from the front and four from the rear and two of the wounds were, according to the autopsy surgeon, fired into the body of the deceased as he lay upon the floor. It was the claim of the accused that he fired in self-defense. Upon entering the billiard room at the rear of the bar, defendant testified that Lopez seized him and accused him of being responsible for an attack upon a former woman friend of his. This accusation was denied by defendant and after some further conversation Lopez again renewed his charge and seized McCurdy and thrust him against the wall. While McCurdy

was recovering his balance the deceased seized a billiard cue and rushed at defendant, who attempted to flee out of the doors leading from the billiard room, but finding himself cut off from escape in each instance, to avoid being struck by the cue in the hands of Lopez he drew his revolver, so he avers, and fired. Defendant testified he could recall none of the details of the shooting, his mind becoming a blank after firing the first shot.

The first assignment of error by appellant is that the evidence was insufficient to sustain the verdict. It is of course elementary that the commission of the homicide by the defendant being established, the burden of proving circumstances in mitigation or that justify or excuse devolves upon the accused, unless the proof on the part of the prosecution tends to show that the crime committed amounted only to manslaughter or that the defendant was justified or excusable. (Pen. Code, sec. 1105.) Here not only was the killing proved, but was admitted, and from the verdict it is evident the jury did not credit defendant's claim of self-defense. It may have been they were not convinced of the truth of the version of defendant. Although only a thin wallboard partition separated defendant from the bar, where several of his companions were, he made no outcry. He claimed to have remembered nothing after firing the first shot, although he walked out from the rear of the room after the shooting and asked for a drink and remarked that he had just shot the deceased, who had attempted to strike him with a billiard cue. He told the night watchman to whom he surrendered his pistol and who placed him under arrest that he had shot a man; he then asked one of his acquaintances to take care of his automobile and refused to make any statement to the sheriff until he had consulted an attorney. The jury also visited the poolroom and examined the physical facts there present. Conceding that defendant may have fired the first shot in self-defense, disabling his assailant, he was not justified in continuing firing or in fatally wounding the assailed, particularly while the deceased lay upon the floor. (*People* v. *Barrett,* 22 Cal. App. 780 [136 Pac. 520]; *People* v. *Brown,* 62 Cal. App. 96 [216 Pac. 411].) The testimony of the doctor was to the effect that two of the shots fired while the deceased lay upon the floor would of themselves have caused

death. It was within the province of the jury to determine whether the defendant acted in self-defense and whether the means used were justified. Having resolved these issues against defendant upon conflicting evidence the verdict of the jury is conclusive.

Defendant made an offer of proof in the absence of the jury, and the sustaining of an objection thereto is also cited as error. The offer was that a certain Indian woman, on an occasion two or three years prior to the homicide, while driving her automobile along a country road, was forced to stop by reason of lack of gasoline. On that occasion three men came to her assistance, one of whom attempted to commit an assault upon her. Her assailant she identified as being stationed at the radio station, which fact, as well as the attempted assault, she had communicated to deceased and to no one else. To this offer an objection was made that it was hearsay and too remote, and the objection was sustained. We believe the court was correct in its ruling. There was contained in the offer nothing to prove that defendant ever had threatened to punish the attacker, or that he was particularly interested in the young woman assaulted, or any proof of any threat or declaration of deceased in regard thereto. As confirmation of the conversation between defendant and the deceased upon the subject of the attack appellant claims that the victim had never mentioned the fact to anyone other than deceased and therefore it is argued that defendant must have learned of the incident from deceased in the billiard room of the Smoke Shop, but the fact that neither the woman nor deceased had discussed the matter with others does not negative the possibility that the three radio men who were involved had themselves related the incident and that defendant learned of the incident at the radio station. We do not believe the court erred in sustaining the objection to the offer of the testimony.

Appellant also insists that he was prevented from fully presenting to the jury his defense because the court erroneously limited the time for argument. The trial occupied something less than three days, the People calling seventeen witnesses in chief and six in rebuttal, the defense twelve. The attorney for the defendant addressed the jury approximately five hours. The district attorney used about three hours. As the hour for adjournment approached on

Friday evening, the attorney for the defendant was still arguing. The court then stated he wanted the case in the hands of the jury by noon of the following day and he wanted the case submitted to the jury Saturday while the facts were fresher in their minds than they would be if the matter were continued until Monday, and suggested a night session, which the attorney for the appellant refused upon the ground he was unable to continue longer with the argument that evening. He said that he would probably require an hour the following morning, but the court limited him to forty-five minutes and at the end of the forty-five minutes argument for defendant was ended. We do not believe that the court abused its discretion in this matter. There is no showing that any matters had not been argued which counsel wished to discuss before the jury and we believe the limitation was reasonable. While the constitutional right of the defendant to be heard in his defense includes a right of complete discussion of all ·the matters of law and evidence embraced by the case, there is nothing to prevent the court from limiting the time for argument, providing it does not thereby deprive the defendant of the opportunity for a full defense. (8 Cal. Jur. 261; *People* v. *Prewett,* 40 Cal. App. 416 [180 Pac. 844].) We find no abuse of discretion under the circumstances here present.

We have examined the entire record and have carefully noted the objections urged by appellant, having in mind the seriousness of the charge from the point of view of the appellant, but can find no error in the record and for that reason the judgment and the order should be affirmed, and it is so ordered.

Plummer, J., and Thompson, J., concurred.