EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARGARO JIMÉNEZ TOLEDO, acusado y apelante.

Número 15731.

*Sometido:* 1 de diciembre de 1954. *Resuelto:* 15 de febrero de 1955.

*Gilberto R. Padró Díaz* y *César Vélez González*, abogados del apelante; *Hon. Secretario de Justicia José Trías Monge, Rafael L. Ydrach, Fiscal,* y *Ramón Olivo Nieves, Fiscal Especial, respectivamente, del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del Tribunal.

Se trata de una apelación contra sentencia del Tribunal Superior, Sala de Arecibo, condenando al apelante a la pena de reclusión perpetua por el delito de asesinato en primer grado, perpetrado por medio de veneno. Señala doce errores en apoyo del recurso.

■ En el primer señalamiento sostiene que el veredicto del jurado es "erróneo, contrario a derecho y a la prueba", por insuficiencia de la que fuera presentada para establecer las alegaciones de la acusación.

El Pueblo adujo evidencia para demostrar que el apelante en la mañana del 13 de abril de 1950, entregó a Rosa Colón, a la sazón joven de catorce a quince años de edad, unos polvos verdes, envueltos en papel blanco, con la encomienda de vaciarlos en una cerveza y dársela a ingerir a Francisca Rivera Chico, para que se curara del vicio del licor, y que Rosa, dándole crédito al apelante, vació los polvos en una cerveza que la primera le pidió que le buscara en la tarde de ese día, cosa que solía hacer. La ingirió Francisca, y una hora después tuvo vómitos y dolores de estómago, siendo conducida al hospital, en donde falleció. La autopsia reveló un líquido de color verdoso en el estómago, denotando la presencia de "verde parís", producto de metal pesado, arsenical, usado frecuentemente en fitopatología, y que es un veneno activo. Examinadas las vísceras, se encontró que contenían 0.003 gramos de arsénico calculado como tiróxido de arsénico y 0.0045 gramos de cobre calculado como tiróxido de cobre en cada cien gramos de tejido, compuestos químicos que tiene el "verde parís", y cantidad de arsénico que puede causar la

muerte, y que dicha Francisca Rivera falleció por haber tomado esa dosis de veneno.

Según el apelante, no se presentó evidencia para demostrar que los "polvos verdes", "fuera 'verde parís'", o para probar que él estuviera en posesión de tales polvos antes o inmediatamente después de la muerte de Francisca Rivera, ni para establecer "el contenido arsenical o de plomo como para causar la muerte de un ser humano". La contención está desprovista de méritos. El jurado tuvo ante sí prueba amplia y suficiente para llegar a la conclusión de que tales hechos habían quedado debidamente probados por El Pueblo.

A juicio del apelante el tribunal a quo incidió en error, apuntado en el segundo señalamiento, al permitir que fuera al jurado prueba tendiente a conectarle "con otro supuesto delito de asesinato por envenenamiento . . .". Algunos testigos declararon que Francisca se había quejado de dolor, de dolor en el estómago, de "dolor de ansias" (sic), y la posición del apelante es que como Rosa Colón testificó que la madre de Francisca había fallecido de "un dolor cólico", y que fué el apelante la única persona a quien vió al lado de ella, el Fiscal, con lo declarado sobre la muerte de la madre, quiso influenciar al jurado, llevando a su ánimo la creencia de que el acusado también la había envenenado. Cita el apelante en apoyo de su contención la decisión del Tribunal de Apelaciones de Nueva York, en *People* v. *Feldman*, 296 N.Y. 127, 71 N.E.2d 433 (N.Y.), caso que es claramente distinguible del presente. Feldman fué procesado por haber dado muerte a su esposa, envenenándola con estricnina. La hermana de la occisa testificó que había tenido una conferencia con Feldman insistiendo en que diera permiso para que se hiciera la autopsia en el cadáver, llamándole la atención a que tanto la madre de la testigo, como la hermana, habían muerto presentando los mismos síntomas, gritando ambas: "No me toquen los pies". La sentencia dictada contra Feldman por asesinato, fué revocada, resolviendo el tribunal en apelación,

que el testimonio, con referencia especial a los gritos, estaba viciado por la razón de que a la luz de otra evidencia presentada en el proceso, esos gritos eran síntomas característicos de envenenamiento con estricnina, lo que implicaba que tanto la madre, como la hermana, con las cuales había residido Feldman, habían fallecido por haber sido envenenadas con ese tóxico. En el caso de autos no hay prueba alguna de que el dolor de estómago, o el "dolor de ansias" (sic), sea síntoma peculiar o idiosincrásico de envenamiento.

Se queja el apelante de que en las instrucciones se le dijera al jurado, refiriéndose el tribunal a lo declarado por Rosa Colón: "Y le pregunta el Fiscal: ¿Usted sabe si murió la mamá de Francisca Rivera Chico? Contesta la muchacha: Sí señor. ¿Sabe cuándo? Dice la testigo Rosa: Yo no recuerdo, yo sé que ella murió de un dolor cólico". Esa referencia al testimonio de Rosa Colón no ha podido ser perjudicial al procesado, por la razón que acabamos de exponer al decidir la primera cuestión planteada en el señalamiento.

■ El tercer error apuntado no requiere extensa consideración. El tribunal sentenciador eliminó ciertas manifestaciones hechas por los testigos, por ser prueba de referencia, y el apelante se queja porque no se le informó al jurado que no debía tomarlas en consideración. La materia eliminada no tenía importancia alguna, y en el supuesto de que fuera considerada por el jurado, y no hay razón para presumir que lo fué, no pudo haber sido perjudicial para el apelante.

■ En el cuarto señalamiento se nos dice que fué error el permitir "que fuera al jurado testimonio inadmisible y que viola la regla de prueba de referencia . . . o de opinión". Dicho testimonio fué presentado sin que se opusiera la defensa, y no puede ser objetado por primera vez en apelación. *Pueblo* v. *Ramos*, 36 D.P.R. 821. La naturaleza de la prueba no justifica que nos apartemos de la doctrina sentada por este Tribunal en esas y en otras decisiones.

12

■ El Pueblo y la defensa estipularon que ciertas personas, de comparecer a testificar, declararían lo consignado en la estipulación, y ésta la llevó consigo el jurado, con la autorización de la corte a quo, al retirarse a deliberar. Sostiene el apelante, en el quinto señalamiento que esto fué un error, y se funda en los preceptos del art. 274 del Código de Enjuiciamiento Civil, al efecto de que: "Al retirarse para deliberar, el Jurado podrá llevar consigo todos los documentos o escritos (exceptuando las deposiciones) que han sido recibidas como prueba en el proceso . . .". El señalamiento está desprovisto de méritos. Las deposiciones se excluyen porque pueden contener materia inadmisible como evidencia que ha podido ser eliminada de la atención del jurado, 8 Cal. Jur. 391; *People* v. *Barret*, 136 Pac. 520 (Cal.), circunstancia que no podía existir en el caso de autos por tratarse, como hemos visto, de una estipulación consentida por las partes. Además, la estipulación la llevó consigo el jurado con la conformidad expresa de la defensa.

No tiene razón el apelante al decirnos en el sexto señalamiento que el tribunal sentenciador le privó "de su derecho constitucional a juicio por jurado . . .". Por lo obvia, es innecesario que expongamos las razones en que se basa nuestra conclusión.

■ Se alega en el séptimo que fué error el no dar instrucciones "sobre evidencia circunstancial". Arguye el apelante que no se presentó prueba para demostrar, (1) "Que los polvos verdes fueran 'verde parís' "; (2) "Que siendo 'verde parís' contuviera arsénico suficiente como para causar la muerte a un ser humano", (3) "Que . . . Francisca Rivera Chico ingiriera dichos polvos verdes, o sea 'verde parís', y que éstos le causaran la muerte". Añade que de haber creído el tribunal que existía evidencia sobre esos extremos, "ésta era de carácter puramente circunstancial", debiendo haber dado instrucciones sobre esa clase de prueba. Estamos plenamente convencidos de que El Pueblo presentó evidencia para

establecer los hechos a que se refiere el apelante. La aducida para probarlos no fué toda circunstancial, y no incurrió el tribunal en error al no dar instrucciones, que tampoco fueron solicitadas por la defensa, sobre evidencia de ese carácter. *Pueblo* v. *Guzmán*, 42 D.P.R. 362. La decisión en *Pueblo* v. *Crespo*, 21 D.P.R. 300, es inaplicable al caso de autos.

■ El error que se le atribuye al tribunal a quo en el octavo señalamiento es el de haber incluído "en su análisis de la prueba una repetición 'verbatim' de la teoría del fiscal". Al empezar a dar las instrucciones al jurado, pero antes de hacer un resumen de la evidencia, dicho tribunal repitió lo expuesto por el representante del ministerio público, al explicar la teoría de su caso, en cuanto al móvil del crimen, a saber: "Demostraremos a ustedes que el móvil de este asesinato fué que este señor acusado Margaro Jiménez Toledo, llevaba relaciones con esta niña Rosa Colón, quien para esa época tendría de 14 a 15 años de edad, y también llevaba relaciones con otra niña un poco mayor, muda, ambas hijastras de la fenecida . . . Que cuando fué violada Rosa Colón, ésta notificó de este hecho a la fenecida, y la fenecida Francisca Rivera Chico en muchas ocasiones le indicó al acusado que si él continuaba sus relaciones sexuales con Rosa Colón, llegaría el momento en que tendría que decírselo a Jacinto Colón y que de ahí surgiría un disgusto".

Nos dice el apelante que no debieron repetirse las palabras del fiscal, porque la teoría del caso no es prueba, y por la razón de que al exponerla, dicho funcionario hizo aseveraciones con el fin de influenciar al jurado en su contra, imputándole haber tenido contacto carnal con una joven que era muda, y haber *violado* a Rosa Colón, extremos acerca de los cuales no hubo prueba, según su criterio.

Los tribunales sentenciadores están en el deber de dar instrucciones sobre toda cuestión o teoría envuelta en el proceso y sostenida por alguna evidencia, lo que pueden hacer, bien repitiendo lo expuesto por las partes, si nada hay en

ello que no deba llegar a conocimiento del jurado, o haciendo un resumen de lo dicho por aquéllas. En el caso de autos el tribunal optó por lo primero, y no se nos ha convencido que se perjudicaran los derechos del acusado porque se repitieran las palabras del fiscal. Aunque al declarar Rosa Colón en el curso del interrogatorio directo, se eliminaron las manifestaciones hechas por ella en el sentido de que el apelante había tenido relaciones sexuales con la muda, al ser repreguntada por el abogado que llevó la representación del procesado en la vista de la causa, testificó que: "Sí, mi padre fué arrestado en una ocasión en que lo acusaron de que había tenido relaciones con una hermana mía; ahora yo acuso a Margaro Jiménez (el apelante) de que me debía a mí, pero de que le debía a la muda no; la muda le justificó a Margaro Jiménez que él le debía a ella", queriendo significar que ésta se había encargado de probar que había tenido contacto carnal con el apelante, sin que la defensa solicitara la eliminación de la manifestación de la testigo. Respecto a la palabra *violación*, usada por el fiscal al explicar su teoría, mejor hubiera sido no repetirla al jurado cuando el tribunal procedió a darle instrucciones, pero en vista del resumen que se hizo en ellas del testimonio de Rosa Colón, no hay razón alguna para presumir que aquél fuera influenciado en contra del apelante por el uso de dicha palabra, o que llegara a una conclusión distinta a la que estaba justificada por la evidencia, en cuanto a las relaciones sexuales entre el apelante y la citada Rosa Colón.

■ La cuestión suscitada en el noveno señalamiento se relaciona con las instrucciones sobre la prueba que era necesaria para corroborar el testimonio de Rosa Colón, de llegar el jurado a la conclusión de que ella era cómplice del procesado. Estamos satisfechos de que las instrucciones trasmitidas sobre ese extremo fueron suficientes y adecuadas. *Pueblo* v. *Márquez*, 64 D.P.R. 371; *People* v. *Owens*, 54 P.2d 728 (Cal.); *People* v. *Davis*, 293 Pac. 32 (Cal.).

■ Se apunta como error en el décimo señalamiento que se instruyó "impropiamente al jurado sobre los efectos de prueba de impugnación de testigo . . .". Rosa Colón negó haber escrito o enviado al apelante una carta pidiéndole dinero, que le fué mostrada por la defensa. Se trajeron al tribunal unas libretas, aceptándose que la letra que aparecía en ellas era de Rosa. Se hizo esto porque el apelante tuvo el propósito de presentar evidencia pericial para demostrar con dichas libretas que la letra que aparecía en la carta, era letra de la testigo. En el curso de sus instrucciones y al referirse la corte a quo a dicho papel, manifestó al jurado lo siguiente: "Tuvo inconvenientes la defensa, según expresó a la corte, de conseguir peritos, por razón de tiempo. *Y los peritos informaban que ellos tardarían no menos de siete días para hacer la comparación, entre lo escrito en el papel y lo escrito por Rosa Colón en las libretas*". Entiende el apelante que lo que aparece subrayado "fué altamente perjudicial a sus intereses" porque "insinuó al jurado de que si los peritos tardarían no menos de siete días para hacer tal comparación, ellos (el jurado) no estaban en condiciones de hacerlo en el curso de sus deliberaciones". No podemos coincidir con ese criterio.

También se queja el apelante de que se le dijera al jurado que: ". . . En el supuesto de que ustedes llegaran a un convencimiento moral de que la letra de este papel fuera la misma letra de las libretas, la cual ha sido aceptada como indubitada, en el supuesto que concluyeran que esta letra es la misma letra de las libretas, o sea, escrita por la mano de Rosa Colón, a ustedes les corresponde determinar si el contenido de ese escrito es bastante a vuestros criterios y a vuestras conciencias para dejar impugnada la declaración que hizo Rosa Colón".

Refiriéndose a esa y a otra instrucción, sostiene que el tribunal a quo perdió de vista la importancia que tenía para impugnar la veracidad de Rosa "el hecho de que la testigo ha-

bía declarado bajo juramento que no había escrito" el citado papel, y que debió instruirse al jurado "De esa propensidad a faltar bajo juramento . . .". No nos impresiona la argumentación del apelante, y estamos plenamente satisfechos de que está huérfana de méritos.

También lo está la contención de que fué error del tribunal sentenciador el negarse a trasmitir al jurado una instrucción a tono con los preceptos del art. 524 del Código de Enjuiciamiento Civil, al efecto de que "Un testigo que hubiere faltado a la verdad en una parte de su declaración, deberá ponerse en duda respecto a otras". La instrucción solicitada por la defensa era innecesaria, en vista de que el extremo a que se refiere fué tratado adecuada y suficientemente en las instrucciones generales.

Alega el apelante en el undécimo señalamiento que el tribunal sentenciador "Actuó movido por pasión, prejuicio y parcialidad y abusó de su discreción en la conducción del caso". Fúndase el señalamiento en que dicho tribunal le hizo diversas preguntas a varios testigos, entre ellos, a Rosa Colón, sosteniéndose que a ésta se le interrogó con el único fin de "rehabilitar" su testimonio, desacreditado, según el apelante, en la repregunta. Nada impropio encontramos en las preguntas que fueron hechas por el tribunal, y no hay base alguna para justificar la seria imputación de que actuó apasionada y prejuiciadamente, imputación que viene haciéndose con harta frecuencia a los magistrados de primera instancia, sin fundamento alguno, no obstante lo expuesto por este Tribunal en *Colón* v. *Gobierno de la Capital*, 62 D.P.R. 25, 34, y más recientemente en *Cordero* v. *Rivera*, 74 D.P.R. 586.

Las instrucciones sobre duda razonable no fueron erróneas, ni insuficientes, como se sostiene en el duodécimo señalamiento.

Termina el apelante su alegato manifestando que el letrado que le representó en la vista del proceso apuntó varios

errores en el tribunal a quo, que debemos considerar, a pesar de que no los señala. No procede que lo hagamos, en vista de que ninguna de las cuestiones a que se refiere son de carácter fundamental. *Pueblo* v. *Maldonado*, 45 D.P.R. 915.

*La sentencia apelada deberá ser confirmada.*