[Crim. No. 809. Third Appellate District.—September 24, 1924.]

## THE PEOPLE, Respondent, v. GEORGE A. MILLER, Appellant.

[1] CRIMINAL LAW — MAINTAINING PLACE FOR SALE OF INTOXICATING LIQUORS — EVIDENCE — WITNESSES — CONTEMPT — ERROR.— In this prosecution for the offense of maintaining a place where intoxicating liquor was sold, kept, and bartered, while the persistence of a witness for the prosecution in restating matters which had been stricken out relating to the character of the premises operated by defendant and the description of women present therein would have justified the trial court in punishing the witness for contempt, it does not appear that the defendant suffered any prejudice from the conduct of the witness.

[2] ID.—SPECTATOR MAKING MOTIONS—CONTEMPT.—In such prosecution there was no misconduct on the part of the trial judge in adjudging, in the presence of the jury, a spectator guilty of contempt for making motions with his head in the presence of the jury.

[3] ID. — INFLUENCING JURY — CONDUCT OF SPECTATOR — CONTEMPT — DUTY OF COURT.—When any spectator at a trial is willfully guilty of conduct tending to or intended to influence the jury, it is the duty of the court to administer prompt and effective punishment.

[4] ID.—TESTIMONY OF DEFENDANT—INSTRUCTION.—While an instruction that "You are not to disregard the defendant's testimony merely because he is the defendant. But you are the sole judges of the credibility of his testimony the same as you are that of any other witness," is an accurate statement of the law, it is improper to single out the testimony of the defendant and instruct with particular reference thereto, but such impropriety is not sufficient ground for reversal.

[5] ID. — NEW TRIAL — DISCRETION.—In such prosecution there was no abuse of discretion on the part of the trial court in denying defendant's motion for a new trial, where the newly discovered evi-

1. See 8 Cal. Jur. 615; 2 R. C. L. 250.

2. See 6 R. C. L. 499.

4. See 8 Cal. Jur. 356.

5. What is cumulative evidence within rule excluding it when offered in support of motion for new trial, note, **Ann. Cas. 1913D,** 157. See, also, 20 **Cal. Jur.** 94; 20 **R. C. L.** 295, 297.

dence was merely cumulative and there was a failure to point out any testimony produced by the prosecution which the facts stated in the affidavits tended to contradict.

---

(1) 17 C. J., p. 302, sec. 3640 (Anno.). (2) 13 C. J., p. 22, sec. 27; 16 C. J., p. 835, sec. 2108. (3) 16 C. J., p. 810, sec. 2059. (4) 16 C. J., p. 931, sec. 2291, p. 1018, sec. 2443. (5) 16 C. J., p. 1199, sec. 2727; 17 C. J., p. 252, sec. 3589.

APPEAL from a judgment of the Superior Court of Butte County and from an order denying a new trial. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. E. Davies for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—In appropriate language the indictment charges the defendant with the offense of maintaining "a place where intoxicating liquor was sold, kept and bartered" in violation of law. He was convicted and this appeal is from the judgment and the order denying his motion for a new trial.

In the month of April, 1924, the defendant conducted a pool-room at the place stated in the indictment. Adjoining his place of business was a building with a flat roof, the walls of the building extending eighteen inches or more above the roof. This adjoining building was unoccupied, except that church services were conducted therein at times. For convenience, this building will be referred to as the church. At the rear of defendant's place of business was a porch roof covered with tar paper. The porch roof, when reached, furnished a convenient means of access to the roof of the church.

William Glynn, a federal prohibition enforcement officer, testified that on the fifteenth, sixteenth, and seventeenth days of April, 1924, he purchased intoxicating liquor from defendant at his place of business; that on the 15th the defendant, by means of a ladder, got a bottle of gin from the roof of the church and served the witness with a drink therefrom; that during these three days the defendant served intoxi-

cating liquor to many other persons; that the defendant said he had as good whisky as there was in Oroville and that he was the only man in town who handled gin, for which he paid eighteen dollars a gallon; that there were three women in the defendant's place of business for whom the witness purchased drinks. T. Kaare, a private detective, employed by the district attorney, testified that on the 13th of April, 1924, he saw "eight or ten" persons drinking intoxicating liquor in defendant's place of business; that he was present with Glynn and saw him purchase intoxicating liquors, as testified by him, and saw others there buying drinks; that at all times there were women there soliciting the detectives to buy them drinks; and that at one time he saw the defendant take a bottle of liquor from under the counter and at another time from a bedroom near the counter. The sheriff of Butte County and the constable of Oroville Township testified that they raided the defendant's place of business on the 19th of April and found six gallon jugs of liquor in a box on the church roof, inside of the wall, and that there was a well-defined trail over defendant's porch roof to the box containing the jugs of liquor. The liquor contained more than fifty per cent of alcohol by volume. The defendant testified that he had never seen either of the detectives at his place of business or sold them liquor; that he had never kept intoxicating liquor there, and that he did not know of there being any liquor on the church roof. No other witness testified for the defense.

When asked to describe the defendant's place of business the witness Glynn replied that it was "conducted in the front portion as a pool-room and in the back room as a bootleg, prostitution, and gambling affair." On motion of counsel for defendant, the court struck out the statement "that it was a prostitution and bootleg place." When asked whether he had purchased intoxicating liquor from defendant, Glynn answered: "I purchased liquor from this defendant, and I also purchased from three prostitutes . . . that were in there at the time soliciting prostitution." The description of the women as prostitutes was stricken out on motion of defendant. On cross-examination the witness stated that he purchased two drinks of jackass whisky from defend-

ant for two women. Counsel for defendant thereupon examined him as follows: "Q. Who were they? A. I don't know. They were soliciting prostitution, that is all I know. Q. They were around there soliciting prostitution from you? A. Yes, sir. . . . Q. What did the prostitutes do with theirs [their liquor]? A. They drank it." The court was not asked to strike out the objectionable language used by the witness, but counsel for defendant, as appears from the foregoing, referred to these women as prostitutes. [1] While the persistence of the witness in restating matters which had been stricken out would have justified the court in punishing him for contempt, it does not appear that the defendant suffered any prejudice from the conduct of the witness. Manifest bias of a witness and his zeal to aid one party usually discredits him in the eyes of the jury. If the testimony of witnesses for the prosecution is true, it necessarily follows that the defendant was conducting a "bootleg" business and its characterization as such by a witness, though improper as a mere conclusion, was not prejudicial. Since the evidence shows that the women in question were present in such "bootleg" place at all the visits of the detectives, soliciting the latter, who were strangers, to buy them intoxicating drinks, the jury naturally must have placed a low estimate upon their characters and it is improbable that any juror was influenced by Glynn's characterization of them. The witness Glynn stated that a dice game was in progress at one time when he visited defendant's place but the court promptly struck out the testimony and instructed the jury to disregard it.

[2] Glynn was asked if anyone but defendant was at the latter's place of business on a specified occasion. Glynn replied: "Yes, sir, there is a man sitting back there, a colored man, that is all that was in there," indicating a colored man in the courtroom. After a few more questions had been asked and answered, the following occurred: "The Court (Intg.) : Just a moment. Bring that man forward here (indicating man in the audience). (At this time the bailiff brings before the court a colored man from the audience.) The Court (to the colored man) : Why didn't you quit making motions with your head in the presence of this jury

when Mr. Chubbuck motioned to you? A. I didn't do it. I didn't see Mr. Chubbuck looking at me. The Court: You are in contempt of this court. (To the sheriff): Hold him in the sheriff's office until I get ready for him.'' It is urged that the foregoing constituted prejudicial misconduct on the part of the court. Counsel for defendant did not assign the same as misconduct or request the court to instruct the jury to disregard it. Neither does the record show that there was any misconduct on the part of the court. [3] When any spectator at a trial is willfully guilty of conduct tending to or intended to influence the jury it is the duty of the court to administer prompt and effective punishment.

[4] It is contended that the court erred in giving the following instruction: ''You are not to disregard the defendant's testimony merely because he is the defendant. But you are the sole judges of the credibility of his testimony the same as you are that of any other witness.'' While the instruction is an accurate statement of the law, it has often been declared improper to single out the testimony of the defendant and instruct with particular reference thereto, though not sufficient ground for reversal. (*People* v. *Passafiume*, 59 Cal. App. 283 [210 Pac. 544]; *People* v. *Fritz*, 54 Cal. App. 137 [201 Pac. 348].)

[5] On the hearing of defendant's motion for a new trial, he introduced affidavits to the effect that he left Oroville between the hours of 10 o'clock and 10:30 A. M. on the 17th of April, 1924, and did not return until the 18th. At the trial the defendant testified that he left Oroville about 10:30 A. M. on the 16th of April and did not return until the evening of the 18th. It thus appears that the newly discovered evidence is merely cumulative. Counsel for appellant has failed to point out any testimony produced by the prosecution which the facts stated in the affidavits tend to contradict. There certainly was no abuse of discretion in the denial of a new trial.

Appellant has assigned more than a score of alleged errors. It would unduly lengthen this opinion to discuss them all specifically. From a careful examination of the record it is manifest that none of the errors complained of are prejudicial. The case made against the defendant is very strong.

There is nothing in the record upon which to base a conclusion that there has been a miscarriage of justice.

The judgment and the order are affirmed.

Hart, J., and Plummer, J., concurred.