[Crim. No. 1233.   Third Appellate District.—December 5, 1932.]

THE PEOPLE, Respondent, v. G. H. HARRIS, Appellant.

Fontaine Johnson and George E. Foote for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted of grand theft upon an information in four counts charging that on the fourteenth day of August, 1931, he took the property of O. G. Gould, consisting of $250. Second count is to the effect that the defendant, on the twenty-second day of September, 1931, took the property of R. J. Reilly, consisting of the sum of $250. The third count charges that on the twenty-fifth day of August, 1931, the defendant took $200, the property of one Dave Ogilvie. The fourth count charges that on the fourteenth day of August, 1931, the defendant took the sum of $250, the property of L. A. Hallstron. The defendant's motion for a new trial being denied, an appeal is prosecuted therefrom, and from the judgment of conviction.

The record shows that the defendant was conducting gasoline filling stations in the city of Sacramento; that in the conduct of said business he required the above-named persons as employees to deposit with him the sums of money mentioned in the information. The defense is that the money so deposited with the defendant was a loan, and not placed in his hands as security for honest actions on the part of the employees in accounting for sales of gasoline and oil.

Upon this appeal the appellant contends that the evidence is insufficient to support the verdict, in that it does not prove that the appellant was acting as an agent of the prosecuting witness, or that he obtained and held the money in a trust capacity, or that the money did not belong to the defendant; and further, it does not show that he converted it to his own use in violation of the trust.

In order to determine whether there is any merit in the appellant's contention it has been necessary to read the entire testimony set forth in the transcript, which, of course, cannot be incorporated into this opinion. There is nothing in the transcript which shows that the appellant was seeking a loan of money, nor does it appear that any of the prosecuting witnesses who became his employees after advancing the sums of money mentioned, were in the business of loaning money, though one of the employees did subsequently loan the defendant some money.

The method adopted by the defendant, upon the employee advancing the money required by him to be advanced, was to execute and deliver to the employee a promissory note, one of which is in the following words and figures, and is a sample of all of them, save that the words "to be held as a security bond" appeared on the face thereof with a line drawn through those words, to wit:

"September 27, 1931.

"Six months after date, without grace, I promise to pay to the order of R. J. Reilly Two hundred and Fifty ($250.00) Dollars, for value received, with interest from date at the rate of 8 per cent per annum until paid, principal and interest payable in lawful money of the United States, at Ali Service Station, and in case suit is instituted to collect this note, or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorneys' fees in said suit.

"(Signed) G. H. HARRIS."

The testimony of Mr. Reilly is substantially the same as that of the other witnesses, save in the particulars which we will later indicate:

"R. J. Reilly, being sworn, testified as follows: Q. Just explain to the court and jury the nature of the business transaction? A. Well, I went out to see Mr. Harris about a job and he said 'I have to have $250.00 as security for

this job.' I said, 'Well, what is that for?' He said, 'That is for the money in the cash register.' He said, 'That is to protect me and to protect you.' So I thought it over a little while. . . . I told him I would take the job. I had American Express Traveler's checks and gave him $260.00 in Traveler's checks, and he made out a slip of paper for $250.00; said he had no change and would send the other $10.00 over to me. I got my $10.00 back; in the meantime, on the 14th, I went over there, the 14th of October, and told him I was going to quit and I wanted all my money and wages, too. 'Well,' he says, 'I will have some money for you to-night.' So I went back over there, and that night he went over and gave me $68.00; that was part of the wages and money that I invested out of my own pocket for gasoline. I made a demand for my $250.00. I never got it back.''

The promissory note above set forth was identified by the witness as the one given to him by Harris.

Dave Ogilvie, being duly sworn, testified as follows: ''Well, I went over to Mr. Harris, and the transaction was agreeable to Mr. Harris and myself. He said I would have to put up $250.00. I asked him what for and he made the statement that it was a protection for him because he had had a man skip out before with money from other service stations. Well, I made the statement to Mr. Harris that I did not have $250.00; all I had was $200.00, and Mr. Harris said to me, 'Well, the way to get around that, you assign me your first two week's salary, $50.00, and that will make it $250.00.' I went to work at the Spanishtown Service Station on Franklin Boulevard, and was there two weeks, when Mr. Wilson brought a note over for $250.00 and gave it to me. It was on the 13th of September when I went over to Mr. Harris. I was not satisfied with it and tried to get my money out of it. I paid Harris $200.00 in cash. The money has never been returned to me.'' The note given by Harris to this witness is similar to the note hereinbefore set forth, differing slightly only in its wording.

L. A. Hallstron, being duly sworn as a witness in behalf of the People, testified as follows: ''I went out to see Mr. Harris in regard to a job, and Mr. Harris told me that he wanted $250.00 as a security bond, as a man had just left with $300.00 about a week previous to that time, and he was not going to take any chances of anybody running off

with the cash register and the receipts, and I asked Mr. Harris if it would not be all right to do it with a Bonding Company or put the money in escrow with a bank, or some similar manner, and he told me no; he said, 'The reason I want this cash security bond is, it is your own money and you will work harder for me, and you know if anything— you won't dare to touch any of my receipts. You know if anything goes wrong, I have that security bond of yours to hold.' '' This witness had demanded the return of the money, but had never received it.

It appears that the appellant, subsequent to the employment of this witness, signed the following instrument which was drawn up by the witness:

"Sacramento, California, August 14, 1931.

"Agreement by and between L. A. Hallstron and G. H. Harris & Sons.

"To whom it may concern:

"Received of L. A. Hallstron $250.00 in cash as per advertisement in the Sacramento Bee, dated August 13, 1931, the aforementioned amount, $250.00, to be held as a security bond (with a line drawn through the words 'to be held as a security bond'), and to be paid back in full to L. A. Hallstron, or beneficiaries, with 8 per cent interest per annum at the expiration of 6 months from date, or at the time L. A. Hallstron severs connection with G. H. Harris & Sons as service station operators, payable on sight.

"(Signed) : G. H. HARRIS & SONS,
"By G. H. HARRIS.
"L. A. HALLSTRON.

"Witness: SAM W. LYTLE."

It appears that in the transaction a note signed by G. H. Harris & Sons, by G. H. Harris, was given this witness, reading as follows: "To whom it may concern: Received from L. A. Hallstron $250.00 in cash, as per advertisement in the Sacramento Bee dated August 13, 1931. The aforementioned amount, $250.00, to be held as security bond (with a line drawn through the words 'to be held as security bond'), and to be paid back in full to L. A. Hallstron, or beneficiaries, with 8 per cent interest per annum, at the expiration of 6 months from date, or at the time L. A. Hallstron severs connection with G. H. Harris & Sons as a service station operator. Q. I see 'to be held as a

security bond' is crossed out? A. Yes. Well, he said he was having his attorney draw up a regular security bond for the protection of us all, and that he would bring me out one in a few days, and would take this back instead of that, but he said he would sign that; he didn't want to sign it but he finally conceded, provided he could draw a line through 'security bond'. He said he wanted a security bond all right, but he said he didn't want it worded just like that.''

O. G. Gould, a witness called on behalf of the People, testified as follows: ''I read an ad in the paper for a service station man so I went out and asked for Mr. Harris. I met Mr. Richards, who told me Mr. Harris was not there, but that he wanted to get out; he wanted to leave the job; said he had some buildings to put up and he would like to sell out. In about a half hour Mr. Harris came in. We went into the office with Mr. Harris and talked the proposition over and I decided to take the job. Mr. Harris took in Mr. Richards' note and made out a new one and handed it to Mr. Richards. Mr. Richards went with me to the bank, and I paid the money to Mr. Richards, and Mr. Richards handed me the paper (which was a note similar in wording to the one first set out herein).''

██ On the part of the appellant, it is contended that the transactions referred to constituted only a loan, and therefore the converting of the money to his own use did not constitute embezzlement on his part. The testimony which we have set forth, however, justified the jury in looking through the form to the real substance of the transaction and to conclude therefrom that the money placed in the hands of the appellant constituted trust funds, and immediately upon his converting it to his own uses and purposes, he became guilty of embezzlement. ██ The testimony, however, does fail to show that the appellant converted to his own use any money belonging to O. G. Gould, and therefore, that the first count in the complaint upon which the defendant was convicted is not supported. The testimony shows that Gould paid his $250 to Richards, took up the note which had been issued to Richards, and surrendered it to Harris for one in favor of himself. That the appellant may have embezzled the money belonging to Richards did not make him guilty of embezzling any money

belonging to Gould. All the other counts appear to be sufficiently supported.

It is further insisted on the part of the appellant that misconduct on the part of the district attorney in asking certain questions necessitates the granting of a new trial. An examination of the transcript shows that the court sustained the appellant's objections to all of the questions asked by the district attorney, and in all excepting one instance, admonished the jury to disregard the same. These questions related to the placing of claims by the prosecuting witnesses in the hands of the labor commissioner. There is no pretense that the claims were paid, and we do not very well see how the jury was influenced thereby. The fact that the claims were placed with the labor commissioner appears to have been brought out by a question asked by counsel for the appellant. The court subsequently struck out all the testimony relating thereto.

It is further objected that the court erred in refusing the following instruction requested by the appellant: ''The court instructs you that if you find that the complaining witnesses parted with their money upon the faith of the note, and not upon any representations made by the defendant, if he did make any, you should find the defendant not guilty.'' Also, in refusing to give the following instruction: ''The court instructs you that if at the time the complaining witness mentioned in counts 1, 2, 3 and 4, gave the defendant the money, the defendant promised to repay it at some future date, but failed for some reason to repay, there is no crime committed and you must return a verdict of not guilty.'' Likewise, in refusing to give the following instruction: ''The court instructs you that the note given in this case is a promissory note, payable at some future date. It is a promise to pay in the future, and you are instructed that a promissory note is not a false token, and not within the statute.''

An examination of the instructions given by the court shows that they are very full and clear, and covered every question involved in this action. Among others, the court instructed the jury as follows: ''The court instructs you that the defendant has been charged with grand theft on the theory of the embezzlement of certain funds belonging to the complaining witnesses. The four essential elements of

the crime of embezzlement are: 1. That the defendant was acting in the capacity of an agent; 2. That he obtained and held the money in his trust capacity; 3. That the money belonged to his principal; and 4. That he converted it to his own use in violation of his trust. If you believe from the evidence that the money was loaned to the defendant, and that he used it in his business, you are to return a verdict of not guilty.''

Also, the court instructed the jury as follows: ''In order to constitute the crime of grand theft on the theory that the defendant was guilty of embezzlement, it is necessary that the People show that the defendant was the agent of the complaining witnesses; that the complaining witnesses were the owners of the property embezzled; that the defendant was in lawful possession of the property alleged to be embezzled at the time the embezzlement took place; that there was a conversion by the defendant with an intent to divert and deprive the complaining witnesses of their property, unlawfully. Therefore, if you believe from the evidence that the complaining witnesses loaned the money to the defendant and took his promissory note therefor, you should return a verdict of not guilty.''

The court also instructed the jury that if the defendant entertained an honest belief by him at the time of the taking that he had a legal right to use the money in his business, that it was the duty of the jury to find the defendant not guilty.

The court further instructed the jury that if they believed from the evidence that the complaining witnesses loaned the money mentioned in the respective counts, to the defendant, and that it was his intention to use the money in his business, and to return it in the usual course of business, the defendant was not guilty of the crime charged.

The court also instructed the jury that the fact of the defendant having failed in business did not make him guilty of grand theft.

The court also gave to the jury an instruction to which the defendant was not entitled, to wit: ''The jury has no right to disregard the testimony of the defendant on the ground that he is the defendant and stands charged with the commission of a crime. . . . The jury should fairly and impartially consider his testimony, together with all the

other evidence in the case." It has been frequently decided that the trial court should not single out the testimony of the defendant and instruct with particular reference thereto. (*People* v. *Miller,* 68 Cal. App. 758 [230 Pac. 191]; *People* v. *Langlois,* 68 Cal. App. 610 [230 Pac. 13]; *People* v. *Brown,* 62 Cal. App. 96 [216 Pac. 411]; *People* v. *Jeans,* 79 Cal. App. 464 [249 Pac. 1089].)

It follows from what has been said that the judgment and order of the trial court as to counts 2, 3 and 4 should be affirmed. And it is so ordered. As to count 1, the order and judgment are reversed.

Pullen, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 20, 1932.