THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARGARO JIMÉNEZ TOLEDO, Defendant and Appellant.

No. 15731. Argued December 1, 1954.—Decided February 15, 1955.

8

*Gilberto R. Padró Díaz* and *César Vélez González* for appellant.
*José Trías Monge, Attorney General, Rafael L. Ydrach* and *Ramón Olivo Nieves, Fiscal and Special Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE SIFRE delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court, Arecibo Part, sentencing appellant to life imprisonment for murder in the first degree, perpetrated by means of poison. Appellant assigns twelve errors in support of his appeal.

 In the first assignment he contends that the verdict of the jury is "erroneous, contrary to the law and to the

evidence" because the evidence was insufficient to establish the allegations of the information.

The People introduced evidence to prove that on the morning of April 13, 1950, the appellant gave to Rosa Colón, then about fourteen or fifteen years old, some green powder wrapped in white paper, with the instructions to pour it into a bottle of beer to be taken by Francisca Rivera Chico, so that she would stop drinking, and that Rosa, believing it to be true, poured the powder in a beer she brought to Francisca on that afternoon, at her request, as she was in the habit of doing. Francisca drank the beer and an hour later she started to vomit and complained of stomach pains, being taken to the hospital where she died. The autopsy revealed a greenish liquid in the stomach, denoting the presence of "Paris green", a product of heavy, arsenical metal, used frequently in phytopathology; and which is an active poison. When the viscera were examined it was found that they contained 0.003 grams of arsenic in the form of arsenic trioxide and 0.0045 grams of copper in the form of copper trioxide in every hundred grams of tissue, which chemical compounds are found in the "Paris green" and which amount of arsenic may cause death, and that said Francisca Rivera died as a result of drinking that dose of poison.

According to the appellant, no evidence was introduced to show that the "green powder was 'Paris green'", or to prove that he was in the possession of said powder before or immediately after the death of Francisca Rivera, or to establish "the arsenical or lead content so as to cause the death of a human being." The contention lacks merits. The jury had before it ample and sufficient evidence to reach the conclusion that said facts had been properly proved by the People.

In his second assignment, appellant believes the court erred in permitting evidence tending to connect him "with another alleged murder by poison . . ." to go to the jury.

Some witnesses testified that Francisca had complained of pains, of stomach ache, of "anxiety pains" (*sic*) and appellant's theory is that inasmuch as Rosa Colón testified that Francisca's mother had died of a "colic pain" and that the appellant was the only person whom she saw by her side, the prosecuting attorney (with the testimony concerning the death of the mother) meant to inflame the minds of the jurors by giving them the impression that the defendant had also poisoned the latter. In support of his contention appellant cites the decision of the Court of Appeals of New York, in *People* v. *Feldman*, 296 N. Y. 127, 71 N. E. 2d, 433 (N. Y.), which is clearly distinguishable. Feldman was prosecuted for the murder of his wife by administering strychnine. The decedent's sister testified that she had had a conversation with Feldman wherein she urged him to permit an autopsy and wherein she mentioned to the accused that the mother of the witness as well as her sister had exhibited before her death some of the same symptoms as decedent, both crying "Don't touch my feet". The judgment rendered against Feldman for murder was reversed, the Court of Appeals holding that the vice of the testimony, with special reference to the decedent's outcries, was that —in the light of other evidence offered in the prosecution that such outcries were characteristic symptoms of strychnine poisoning—it implied that the decedent and her mother —Feldman had lived with both—had died of strychnine poisoning. In the case at bar, there is no evidence that the stomach ache or the "anxiety pain" (*sic*) is a peculiar or characteristic symptom of poisoning.

Appellant complains that, in charging the jury, the court in referring to Rosa Colón's testimony said: "And the prosecuting attorney asks her: Do you know if Francisca Rivera Chico's mother died? The girl answers: Yes, sir. Do you know when? Rosa, the witness, answers: I do not remember, I know she died of a colic pain." That reference to

Rosa Colón's testimony could not have been prejudicial to the accused for the reason we have just stated in disposing of the first question raised in the assignment.

The third assignment does not require much consideration. The trial court eliminated certain statements made by the witnesses, as being hearsay evidence, and the appellant complains that the jury was not informed to disregard said evidence. The matter eliminated was unimportant, and assuming that it was taken into consideration by the jury, and there is no reason to assume that it was, it could not have prejudiced appellant's rights.

In the fourth assignment it is alleged that the court erred in permitting "inadmissible testimony which violates the hearsay . . . or opinion evidence rule to go to the jury." Said testimony was introduced without any objection on the part of the defendant, and it cannot be attacked for the first time on appeal. *People* v. *Ramos*, 36 P.R.R. 739. The nature of the evidence does not justify our departure from the doctrine laid down by this Court in that and other decisions.

The People and the defense stipulated that certain persons, if called to the witness stand, would testify what was set forth in the stipulation, and the jury took it to the jury room, with the authorization of the trial court. Appellant contends in the fifth assignment that this was an error, and he bases his contention on the provisions of § 274 of the Code of Criminal Procedure, to the effect that: "Upon retiring for deliberation the jury may take with them, all papers (except depositions) which have been received as evidence in the cause . . ." The assignment is without merit. The depositions are excluded because they may contain matter inadmissible as evidence which might have been eliminated from the attention of the jury, 8 Cal. Jur. 391; *People* v. *Barret*, 136 Pac. 520 (Cal.), which could not be the case here because the paper in this case, as we have

seen, was a stipulation consented to by the parties. Furthermore, the jury took with them the stipulation with the express consent of the defense.

Appellant is not correct in alleging in the sixth assignment that the trial court deprived him "of his constitutional right to a trial by jury . . ." We need not set forth the reasons on which our conclusion is based because it is obvious.

■ In the seventh assignment it is alleged that the court erred in failing to give instructions "on circumstantial evidence." The appellant argues that no evidence was introduced to show, (1) "That the green powder was 'Paris green'"; (2) "That being 'Paris green' it had sufficient arsenic to cause the death of a human being", (3) "That . . . Francisca Rivera Chico took those green powders, that is, 'Paris green' and that they caused her death." He adds that if the court believed that there was evidence on those points "this was of a purely circumstantial nature" and instructions concerning this kind of evidence should have been given. We are fully convinced that the People introduced evidence to establish the facts to which appellant refers. The evidence adduced to prove those facts was not altogether circumstantial, and the trial court did not err in failing to instruct the jury—which defendant did not request the court to do—with respect to evidence of that nature. *People* v. *Guzmán*, 42 P.R.R. 350. The decision in *People* v. *Crespo*, 21 P.R.R. 285, is inapposite to the case at bar.

■ The error charged to the trial court in the eighth assignment is its having included "in its analysis of the evidence a 'verbatim' repetition of the prosecuting attorney's theory". Upon beginning its instructions to the jury, but before making a summary of the evidence, said court repeated what had been set forth by the representative of the People upon explaining the theory of his case, as to the motive of the crime, to wit: "We shall prove to you that the motive of this crime was that this defendant, Margaro Jiménez

Toledo, had relations with this girl Rosa Colón, who at the time was fourteen or fifteen years old, and that he also had relations with another girl, slightly older, a mute, both stepdaughters of the deceased . . . That when Rosa Colón was raped, she told the decedent, and the decedent, Francisca Rivera Chico, on many occasions told the defendant that if he continued his sexual relations with Rosa Colón, the time would come when she would have to tell it to Jacinto Colón and there would be trouble."

Appellant contends that the prosecuting attorney's words should not have been repeated, because the theory of the case is not evidence, and because upon setting it forth, said official made some statements intending to influence the jury against defendant, charging him with having had sexual intercourse with a mute young woman, and having *raped* Rosa Colón, on which particulars there was no evidence, according to his opinion.

It is the duty of the trial court to give instructions on every question or theory involved in the prosecution and supported by some evidence, which it may do, either by repeating what has been set forth by the parties, if there is nothing therein which should not reach the jury, or by making a summary of the statements of the parties. In the case at bar, the court chose the former, and we have not been convinced that defendant's rights were prejudiced by the repetition of the prosecuting attorney's words. Although the statements made by Rosa Colón on direct examination, to the effect that appellant had had sexual relations with the mute girl, were eliminated, on cross-examination by defendant's counsel she testified that: "Yes, my father was arrested on one occasion when he was accused of having relations with one of my sisters; now I accuse Margaro Jiménez (the appellant) of dishonoring me, but not of dishonoring the mute girl; the mute girl justified that Margaro Jiménez had dishonored her", meaning to say that she had taken care of

proving that she had had sexual relations with the appellant, without the defense moving for the elimination of the witness' statements. With respect to the word *rape*, used by the prosecuting attorney upon explaining his theory, it would have been better not to repeat it to the jury when the court gave its instructions, but in view of the summary of Rosa Colón's testimony made in those instructions, there is no reason for presuming that the jury was influenced against the appellant by the use of said word, or that it reached a conclusion other than the one justified by the evidence, as to the sexual relations between the appellant and the said Rosa Colón.

■ The question raised in the ninth assignment is connected with the instructions concerning the necessary evidence in order to corroborate Rosa Colón's testimony, if the jury reached the conclusion that she was the accused's accomplice. We believe that the instructions given on that point were sufficient and appropriate. *People* v. *Márquez*, 64 P.R.R. 354; *People* v. *Owens*, 54 P. 2d, 728 (Cal.); *People* v. *Davis*, 293 Pac. 32 (Cal.).

■ The tenth error is that the instruction to "the jury was improper with regard to the effects of evidence of impeachment of a witness . . .". Rosa Colón denied having written or sent to appellant a letter which was shown to her by the defense, asking him for money. Some notebooks were brought to court, it being accepted that the handwriting appearing therein was Rosa's. This was done because appellant intended to introduce expert evidence in order to prove by said notebooks that the handwriting in the letter was the witness'. In the course of its instructions and upon referring to said written note, the trial court stated the following to the jury: "The defense had difficulties, as stated to the Court, in finding experts because of lack of time. *And the experts reported that they would take at least seven days to make the comparison between what was written in the paper and what Rosa Colón had written in the notebooks.*"

Appellant believes that the matter in italics "was highly prejudicial to his rights" because "it insinuated to the jury that if the experts would take at least seven days to make such comparison, they (the jury) were in no condition to do so in the course of their deliberations." We cannot agree with said criterion.

Appellant also complains that the jury was instructed that: " . . . Assuming that you become morally convinced that the handwriting in this paper is the same as that of the notebooks, which handwriting has already been accepted indubitably, assuming that you conclude that this handwriting is the same as that of the notebooks, that is, written by the hand of Rosa Colón, it is your duty to determine whether the contents of this written note are enough, in your opinion, and according to your conscience, to impeach Rosa Colón's testimony."

Referring to that and to another instruction, he contends that the trial court did not attach to "the fact that the witness had sworn under oath that she had not written" the afore-cited note, the importance it had for impeaching Rosa's credibility, and that the jury should have been instructed with regard to "her inclination to speak falsely under oath . . ." We are not impressed by appellant's argument and we are fully convinced that it is devoid of merit.

■ The contention that the trial court erred in refusing to charge the jury in harmony with the provisions of § 524 of the Code of Civil Procedure to the effect that "A witness false in one part of his testimony is to be distrusted in others," also lacks merit. The instruction requested by the defense was unnecessary, in view of the fact that the point to which it refers was properly and sufficiently covered by the general instructions.

■ Appellant alleges in the eleventh assignment that the trial court "acted with passion, prejudice and partiality, and abused its discretion in conducting the case." The assign-

ment is based on the fact that said court asked several wit-·nesses, Rosa Colón among them, different questions, it being maintained that the latter was questioned for the sole purpose of "rehabilitating" her testimony, which was discredited,. according to the appellant, on cross-examination. There was nothing improper about the questions made by the court, and there is no basis to justify the serious charge that it acted with passion and prejudice, which imputation, without any basis, is being made all too often to the judges of first instance, notwithstanding the statements of this Court in *Colón* v. *Government of the Capital*, 62 P.R.R. 24, 33, and more recently in *Cordero* v. *Rivera*, 74 P.R.R. 548.

The instructions with respect to reasonable doubt were neither erroneous nor insufficient, as stated in the twelfth assignment.

Appellant concludes his brief by stating that his attorney pointed out several errors committed by the trial court,. which we should consider, although he fails to assign them. But we need not pass on them in view of the fact that none of the questions to which he refers are fundamental. *People* v. *Maldonado*, 45 P.R.R. 885.

The judgment appealed from will be affirmed.